IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RAVINGER SINGH and DAVID PILL, | § | |
| | § | |
| Plaintiffs Below-Appellants, | § | No. 645, 2015 |
| | § | |
| v. | § | Court Below:  Court of Chancery |
| | § | of the State of Delaware |
| NEALE ATTENBOROUGH, | § | |
| YUVAL BRAVERMAN, TERRY | § | C.A. No. 9388-VCM |
| BURMAN, DAVID F. DYER, | § | |
| KENNETH B. GILMAN, THEO | § | |
| KILLION, JOHN B. LOWE, JR., | § | |
| JOSHUA OLSHANSKY, BETH M. | § | |
| PRITCHARD, SIGNET JEWELERS | § | |
| LIMITED, and MERRILL, LYNCH, | § | |
| PIERCE, FENNER & SMITH, | § | |
| | § | |
| Defendants Below-Appellees. | § | |

Submitted:  May 4, 2016
Decided:  May 6, 2016

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, and **VAUGHN**, Justices; and **STOKES**, Judge,[*] constituting the Court *en banc*.

**O R D E R**

This 6th day of May 2016, having considered this matter on the briefs filed by the parties and after oral argument:

(1)    We affirm the judgment of the Court of Chancery solely on the basis of its decision on reargument of October 29, 2015, finding that a fully informed, uncoerced vote of the disinterested stockholders invoked the business judgment

---

[*] Sitting by designation under Del. Const. art. IV, § 12.

rule standard of review.[1] But, we note that the reargument opinion's decision to consider post-closing whether the plaintiffs stated a claim for the breach of the duty of care after invoking the business judgment rule was erroneous. Absent a stockholder vote and absent an exculpatory charter provision, the damages liability standard for an independent director or other disinterested fiduciary for breach of the duty of care is gross negligence, even if the transaction was a change-of-control transaction.[2] Therefore, employing this same standard after an informed, uncoerced vote of the disinterested stockholders would give no standard-of-review-shifting effect to the vote. When the business judgment rule standard of review is invoked because of a vote, dismissal is typically the result.[3]

---

[1] *In re Zale Corp. Stockholders Litig.*, 2015 WL 6551418 (Del. Ch. Oct. 29, 2015); *see also Corwin v. KKR Fin. Holdings LLC*, 125 A.3d 304, 308–12 (Del. 2015) (affirming the Court of Chancery's finding that a fully informed, uncoerced vote of the disinterested stockholders invoked the business judgment rule standard of review).

[2] *See, e.g.*, *McMillan v. Intercargo Corp.*, 768 A.2d 492, 505 n.56 (Del. Ch. 2000) (explaining, in a case involving a post-closing damages claim attacking a change-of-control transaction, that "[i]n the absence of the exculpatory charter provision, the plaintiffs would still have been required to plead facts supporting an inference of gross negligence in order to state a damages claim").

[3] *See In re Cornerstone Therapeutics Inc, Stockholder Litig.*, 115 A.3d 1173, 1175–76 (Del. 2015) ("A plaintiff seeking only monetary damages must plead non-exculpated claims against a director who is protected by an exculpatory charter provision to survive a motion to dismiss, regardless of the underlying standard of review for the board's conduct—be it *Revlon*, *Unocal*, the entire fairness standard, or the business judgment rule." (citations omitted)); *Marciano v. Nakash*, 535 A.2d 400, 405 (Del. 1987) ("[A]pproval by fully-informed disinterested . . . stockholders . . ., permits invocation of the business judgment rule and limits judicial review to issues of gift or waste with the burden of proof upon the party attacking the transaction."); *Harbor Fin. Partners v. Huizenga*, 751 A.2d 879, 881–82 (Del. Ch. 1999) ("The affirmative stockholder vote on the Merger was informed and uncoerced, and disinterested shares constituted the overwhelming proportion of the Republic electorate. As a result, the business judgment rule standard of review is invoked and the Merger may only be attacked as wasteful. As a matter of logic and sound policy, one might think that a fair vote of disinterested stockholders in support

That is because the vestigial waste exception has long had little real-world relevance,[4] because it has been understood that stockholders would be unlikely to approve a transaction that is wasteful. Certainly, there is no rational argument that waste occurred here.

(2)    Finally, we distance ourselves from the Court of Chancery's original decision of October 1, 2015, in terms of its handling of the claims against the board's financial advisor.[5] We are skeptical that the supposed instance of knowing wrongdoing—the late disclosure of a business pitch that was then considered by the board, determined to be immaterial, and fully disclosed in the proxy—produced a rational basis to infer scienter.[6] Furthermore, to the extent the Court of Chancery

___

of the transaction would dispose of the case altogether because a waste claim must be supported by facts demonstrating that 'no person of ordinary sound business judgment' could consider the merger fair to Republic and because many disinterested and presumably rational Republic stockholders voted for the Merger." (quoting *Saxe v. Brady*, 184 A.2d 602, 610 (Del. Ch. 1962))).

[4] *See Huizenga*, 751 A.2d at 901 ("If fully informed, uncoerced, independent stockholders have approved the transaction, they have . . . made the decision that the transaction is 'a fair exchange.' As such, it is difficult to see the utility of allowing litigation to proceed in which the plaintiffs are permitted discovery and a possible trial, at great expense to the corporate defendants, in order to prove to the court that the transaction was so devoid of merit that each and every one of the voters comprising the majority must be disregarded as too hopelessly misguided to be considered a 'person of ordinary sound business judgment.' In this day and age in which investors also have access to an abundance of information about corporate transactions from sources other than boards of directors, it seems presumptuous and paternalistic to assume that the court knows better in a particular instance than a fully informed corporate electorate with real money riding on the corporation's performance." (quoting *Michelson v. Duncan*, 407 A.2d 211, 224 (Del. 1979))); *Lewis v. Vogelstein*, 699 A.2d 327, 336 (Del. Ch. 1997) ("Courts are ill-fitted to attempt to weigh the 'adequacy' of consideration under the waste standard or, *ex post*, to judge appropriate degrees of business risk.").

[5] *In re Zale Corp. Stockholders Litig.*, 2015 WL 5853693 (Del. Ch. Oct. 1, 2015), *opinion amended on reargument*, 2015 WL 6551418 (Del. Ch. Oct. 29, 2015).

[6] *See RBC Capital Mkts, LLC v. Jervis*, 129 A.3d 816, 862 (Del. 2015).

purported to hold that an advisor can only be held liable if it aids and abets a non-exculpated breach of fiduciary duty, that was erroneous. Delaware has provided advisors with a high degree of insulation from liability by employing a defendant-friendly standard that requires plaintiffs to prove scienter and awards advisors an effective immunity from due-care liability. As held in *RBC Capital Markets, LLC v. Jervis*, however, an advisor whose bad-faith actions cause its board clients to breach their situational fiduciary duties (e.g., the duties *Revlon* imposes in a change-of-control transaction) is liable for aiding and abetting.[7] The advisor is not absolved from liability simply because its clients' actions were taken in good-faith reliance on misleading and incomplete advice tainted by the advisor's own knowing disloyalty.[8] To grant immunity to an advisor because its own clients were duped by it would be unprincipled and would allow corporate advisors a level of unaccountability afforded to no other professionals in our society. In fact, most professionals face liability under a standard involving mere negligence, not the second highest state of scienter—knowledge—in the model penal code.[9] Nothing in this record comes close to approaching the sort of behavior at issue in *RBC*

---

[7] *See id.* at 865 (finding, in the context of a change-of-control transaction, that "[t]he claim for aiding and abetting was premised on [the financial advisor]'s 'fraud on the Board,' and that RBC aided and abetted the Board's breach of duty where, for [the financial advisor]'s own motives, it 'intentionally duped' the directors into breaching their duty of care. The record evidence amply supports the trial court's conclusion that [the financial advisor] purposely misled the Board so as to proximately cause the Board to breach its duty of care." (quoting *Goodwin v. Live Entm't, Inc.*, 1999 WL 64265, at *28 (Del. Ch. Jan. 25, 1999), *aff'd*, 741 A.2d 16 (Del. 1999))).
[8] *See id.* at 861–66.
[9] *See* MODEL PENAL CODE § 2.02 (AM. LAW INST., 1980).

*Capital Markets*; nonetheless, we distance ourselves from the Court of Chancery's earlier memorandum opinion in this case. Having correctly decided, however, that the stockholder vote was fully informed and voluntary, the Court of Chancery properly dismissed the plaintiffs' claims against all parties.

NOW, THEREFORE, IT IS ORDERED that the October 29, 2015 judgment of the Court of Chancery is AFFIRMED.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice

5